**Tawona Sharmin RILES, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 07–12–00386–CR.**

Court of Appeals of Texas, Amarillo.

Oct. 7, 2013.

Opinion on Denial of Rehearing Nov. 25, 2013.

John Bennett, Tawona Sharmin Riles, Don F. Schofield, for Appellant.

John L. Owen, Amarillo, for the State.

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

## OPINION

BRIAN QUINN, Chief Justice.

Appellant, Tawona Sharmin Riles, appeals her conviction for possessing a controlled substance with intent to deliver. Upon her pleading guilty, the adjudication of her guilt was deferred, and the trial court placed her on community supervision. Subsequently, the State filed a motion to adjudicate guilt, which motion the trial court granted. Thereafter, it sentenced her to a seven year prison term and "order[ed] [her] to pay all fines, court costs, and restitution as indicated in attached Bill of Cost." The question before us involves the attorney's fees that appellant was directed to pay (via the judgment deferring her adjudication of guilt) as a condition of her community supervision. Appellant was originally found indigent and granted appointed counsel. Furthermore, the record contains no evidence indicating that she had the ability to pay such fees when ordered to so pay them. And, it was only those fees which were encompassed in the bill of cost that issued upon the adjudication of her guilt and final sentencing. We are asked whether the trial court erred in ordering payment of those fees without receiving evidence that appel-

lant had the ability to pay them. Our answer is that the claim was forfeited.

■ In reaching our conclusion we rely upon the most recent Court of Criminal Appeals exposition on the matter, *Wiley v. State,* 410 S.W.3d 313 (Tex.Crim.App. 2013). Upon his plea of guilty, the trial court sentenced Wiley, suspended the sentence, and placed him on community supervision. He was also ordered to pay attorney's fees as a condition of his probation despite being deemed an indigent at the inception of the prosecution. Eventually, the trial court revoked his community supervision, sentenced him, and ordered him to pay the attorney's fees assessed when previously granted probation, among other things. Appellant objected to the payment of those fees because the evidence allegedly was insufficient to illustrate that he had the ability to pay them. *See Cates v. State,* 402 S.W.3d 250, 251–52 (Tex.Crim.App.2013) (stating that a defendant who was found to be indigent may later be ordered to pay for the fees incurred by his appointed counsel upon proof that he has the ability to pay them). The Court of Criminal Appeals rejected the argument, however. As explained by the court:

the appellant could readily have raised this sufficiency claim in a direct appeal from the initial judgment imposing community supervision. Failing to do so, we hold, constituted a procedural default under [*Manuel v. State,* 994 S.W.2d 658 (Tex.Crim.App.1999) ]. The record in this case shows that the appellant was well aware of the existence and the amount of the attorney fees that were imposed for his court appointed representation during the plea proceedings. The bill of costs was dated the same day as the judgment imposing community supervision and was, by the terms of the

judgment itself—as indicated in bold capital letters—attached. By his signature, the appellant expressly acknowledged having read and understood the conditions of community supervision. Under these circumstances, the presumption of regularity applies, and we must conclude that the appellant was aware of the requirement that he pay court costs, including the cost of court appointed attorney fees, even as of the time he signed the judgment. He would therefore have known to challenge the sufficiency of the evidence to support this requirement as of the time of any direct appeal from that judgment.

Instead of doing so, he waived his right to appeal, though not required to do so by the terms of any negotiation with the State. Whatever else could be said about such a waiver of appeal, it was certainly executed knowingly with respect to any possible claim that the record did not support the assessment of attorney fees. That he chose to forego that appeal must work as a forfeiture of the claim, and he may not, consistent with our case law, attempt to resuscitate it in a later appeal from the revocation of his community supervision.

*Id.,* at 320–21.

*Manuel* involved effort by the appellant to raise questions relating to his original plea hearing after his probation had been revoked. *Manuel v. State,* 994 S.W.2d 658 (Tex.Crim.App.1999). That is, Manuel had pled guilty. The trial court accepted the plea but opted to defer the adjudication of his guilt. Instead, it granted him community supervision or probation. Upon Manuel violating a term of that supervision, the trial court revoked his probation, adjudicated his guilt for the crime to which he pled guilty and assessed punishment. He then appealed, contending that "the evidence adduced at the original plea pro-ceeding had been insufficient to prove his guilt." *Id.* at 660. The Court of Criminal Appeals framed the issue before it as: "[i]f a defendant pleads guilty to a felony offense, is placed on deferred adjudication community supervision, and is later adjudicated guilty, may he then, on appeal, complain of error in the original plea proceeding?" *Id.* at 659. Before answering, the court noted that "defendants [were entitled] to appeal from deferred adjudication community supervision to the same extent (*i.e.,* with the same rights and restrictions) as defendants [we]re permitted to appeal from 'regular' community supervision." *Id.* at 661. It then added the observation that "a defendant placed on 'regular' community supervision may raise issues relating to the conviction, *such as evidentiary sufficiency,* only in appeals taken when community supervision is originally imposed ... [t]hat is, such issues may not be raised in appeals filed after 'regular' community supervision is revoked." *Id.* (emphasis added). And, these observations led the court to

> hold that this rule also applies in the deferred adjudication context. In other words, a defendant placed on deferred adjudication community supervision may raise issues relating to the original plea proceeding, *such as evidentiary sufficiency,* [emphasis added] only in appeals taken when deferred adjudication community supervision is first imposed. Certainly, it was not the Legislature's intent, in enacting Article 44.01(j), to permit *two* reviews of the legality of a deferred adjudication order, one at the time deferred adjudication community supervision is first imposed and another when, and if, it is later revoked.

*Id.* at 662. Simply put, Manuel could have questioned the sufficiency of the evidence substantiating his guilt immediately after having the adjudication of his guilt deferred and being placed on community

supervision. Rather than do so, he waited to complain until his probation was revoked and the trial court convicted him. That resulted in his forfeiting the issue. *Id.*

Here, like the defendant in *Manuel*, appellant had the adjudication of her guilt deferred. So too was she placed on community supervision. Appearing in the order manifesting that decision was the obligation for appellant to pay attorney's fees.[1] Furthermore, she and her attorney acknowledged the obligation in the plea admonishments and waivers signed by both as well as in her application for probation signed by appellant. Though she could have appealed from that decision and questioned the sufficiency of the evidence underlying the obligation to pay such fees, she did not. Instead, she waited to do so until after the trial court revoked her probation, adjudicated her guilt, and levied sentence. To conform to both *Wiley* and *Manuel*, we cannot but hold that the delay caused appellant to forfeit the claim now before us.

The dissent places great emphasis on that portion of *Wiley* illustrating that the

appellant there had notice of the obligation to pay attorney's fees. Admittedly, the *Wiley* panel did make such observations after concluding that he had procedurally defaulted *a la Manuel*. Why such a discussion was undertaken is unknown. *Manuel* said nothing about forfeiting only those issues of which appellant knew at the time he opted to forego appeal once the adjudication of his guilt was deferred. Indeed, precedent from that very court indicates that all non-jurisdictional issues are lost. *See e.g. Daniels v. State*, 30 S.W.3d 407, 408 (Tex.Crim.App.2000). It may well be that the Court of Criminal Appeals wanted to include within the category of jurisdictional error any complaint which could have been appealed when a defendant is given deferred adjudication but of which the defendant may not have known for some reason. But we leave it to that court to clarify its desire, if any. Until it expressly alters or overrules *Manuel* and its progeny, we continue to apply that authority as written.

The judgment is affirmed.

PIRTLE, J., dissenting.

1. We note that in the record are plea admonishments and waivers signed by appellant and her attorney that contain the following language:

> The defendant understands that in addition to any sentence imposed by the Court there are mandatory costs of Community Supervision, including but not limited to: Costs of Court, Community Supervision fees (up to $60 per month), restitution to the victim(s), payments for DPS Lab ($140), *fees for court appointed attorney*, fees related to testing and treatment, payments to Crime Victims Compensation Fund (up to $100), payments to Crime Stoppers ($50), payments to The Bridge Children Advocacy Center, electronic monitoring, and classes/instruction related to their specific needs as may be ordered by their probation officer or the Court.
> *By entering this Plea and Disposition Agreement the defendant affirmatively*

*states to the Court that he/she has the financial resources to pay the costs associated with Community Supervision* in their specific case and that their personal financial situation is expected to be stable throughout the term of Community Supervision. The defendant understands that it is the obligation of the defendant to notify his/her probation officer of any significant change in his/her financial situation that would impact his/her ability to pay the fees and costs associated with Community Supervision.
(Emphasis added).

We, further, note that appellant was also advised of the payment of attorney's fees in her signed application for probation. Given this information, the obligation to pay attorney's fees was quite obvious at the time appellant received deferred adjudication.

**610**

PATRICK A. PIRTLE, Justice, dissenting.

Appellant, Tawona Sharmin Riles, appeals her conviction for possessing a controlled substance with intent to deliver.[1] Upon a plea of guilty, but without an agreed recommendation as to punishment, the adjudication of her guilt was deferred and she was placed on community supervision for a term of eight and one-half years. The *Order of Deferred Adjudication* signed at the time of her plea "orders [Appellant] to pay all fines, court costs, and restitution as indicated above." Above that provision is the summary portion of the order which states, "Court Costs: see attached." The *Bill of Costs* purportedly attached states, "Attorney Fees (Court Appointed) $1,000.00." While the Clerk's Record designates the *Bill of Costs* as being "attached" to the *Order of Deferred Adjudication,* it is unlikely that it was attached when signed. The order itself bears a signature date of March 3, 2010, while the *Bill of Costs* was not issued until March 19, 2010.[2] Furthermore, even the *Attorney Fee Voucher* supporting the award of attorney's fees was not signed until March 4, the day after the order was signed.

On August 25, 2011, the State filed a motion to revoke Appellant's deferred adjudication. Approximately one year later, on August 22, 2012, following a plea of true without a recommendation as to punishment, Appellant was adjudicated guilty and sentenced to seven years of incarceration and a fine of $500. The *Judgment Adjudicating Guilt* "order[ed] [her] to pay all fines, court costs, and restitution as indicated in attached Bill of Cost." The *Bill of Costs* purportedly attached states, "Attorney Fee(s)—Original Plea Agreement $1,000.00." While the Clerk's Record designates the *Bill of Costs* as being attached to the *Judgment Adjudicating Guilt,* it is again reasonable to assume that it was not attached when signed. The judgment itself bears a signature date of August 23, 2012, while the *Bill of Costs* bears an issue date of August 24, 2012.[3]

Appellant gave timely notice of appeal and by a single issue, she contends the trial court erred by ordering her to repay court-appointed attorney's fees from her original plea because there was no evidence of her ability to pay. *See Mayer v. State,* 309 S.W.3d 552 (Tex.Crim.App. 2010). The State contends evidence of her ability to pay was before the trial court and Appellant agreed to pay those fees as a condition of deferred adjudication. Relying upon the recent Court of Criminal Appeals decision in *Wiley v. State,* 410 S.W.3d 313 (Tex.Crim.App.2013), the majority concludes Appellant is procedurally barred from asserting her claim because she did not raise her sufficiency claim in a direct appeal from the initial order of deferred adjudication. Because I believe the majority reads *Wiley* too broadly, I respectfully dissent.

---

1. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2010). Based on the amended indictment alleging possession of one gram or more but less than four grams, the offense was punishable as a second degree felony. *See* TEX HEALTH & SAFETY CODE ANN. § 481.112(c) (West 2010). The indictment also contained an allegation that the offense was committed in a drug-free zone, thereby increasing the minimum sentence by five years and doubling the possible fine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.134(c) (West Supp.2012).

2. While the *Order of Deferred Adjudication* bears a file stamp dated March 19, 2010, the *Bill of Costs* does not bear any time-dated file stamp.

3. Additionally, while each page of the *Judgment Adjudicating Guilt* bears a time-posted file stamp dated August 24, 2012, the *Bill of Costs* does not bear any time-posted file stamp.

In *Wiley* the Court of Criminal Appeals clarified a split between the intermediate courts of appeal concerning whether an appellant can raise a sufficiency of the evidence claim concerning the reimbursement of court-appointed attorney's fees imposed during an original plea proceeding resulting in straight probation in a later appeal from the revocation of that community supervision. There, the Court held that a defendant is procedurally defaulted under *Manuel v. State*, 994 S.W.2d 658, 661–62 (Tex.Crim.App.1999), from asserting error that "could readily have been raised ... in a direct appeal from the initial *judgment* imposing community supervision." *Wiley*, 410 S.W.3d at 320 (emphasis added). In reaching its conclusion, the Court of Criminal Appeals emphasized that the "record in this case shows the appellant was well aware of the existence *and amount* of attorney fees that were imposed for his court appointed representation during the [original] plea proceedings." *Id.* In *Wiley* the judgment itself contained a handwritten notation on the face of the document stating the exact dollar amount of attorney's fees being ordered. The opinion of the Court also emphasized the fact that the *Bill of Costs* was dated the same day as the original *judgment* and was *attached* to that judgment, giving rise to the presumption that the appellant was fully aware of the *full extent of the court's order* when he signed the judgment. *Id.*

While the majority here reaches the conclusion that the pertinent facts of this case were substantially akin to those in *Wiley*, that simply is not the case. *Wiley* involved the revocation of an order of "straight probation," where, in the original proceeding, a judgment was entered in addition to an order stating the terms and conditions of community supervision; whereas this case involves the revocation of an order deferring an adjudication of

guilt where no judgment "independently imposed an obligation to repay attorney fees—'as court costs.'" *Id.* at 320. *Wiley* involved a *judgment*, signed by the defendant, expressly stating the exact dollar amount of attorney's fees subsequently being contested; whereas here, the *Order of Deferred Adjudication* references an attachment (not even in existence, much less actually attached when executed) concerning an undetermined amount of attorney's fees (to be subsequently awarded), which were to be paid in accordance with a payment arrangement (to be subsequently made) with a representative of the county "Collections Department."

The majority also posits that *Manuel* brings this case into the context of a procedural default because, like here, the revocation of an order of deferred adjudication was involved in that case. In *Manuel* the Court of Criminal Appeals held that an appellant was procedurally barred from contesting the sufficiency of the evidence relating to the issue of *guilt* in any proceeding other than "appeals taken when community supervision is originally imposed...." *Manuel*, 994 S.W.2d at 661. Because Manuel could have questioned the sufficiency of the evidence substantiating his guilt immediately after being placed on community supervision, he was procedurally barred from raising that issue when his deferred adjudication was revoked. *Id.* But *Manuel* is factually distinguishable from this case. In *Manuel* the appellant sought to contest a finding essential to the original order of deferred adjudication—a finding of guilt. Whereas here, Appellant is contesting a factual determination—the ability to repay $1,000 in court-appointed attorney's fees—that was not even made at the time she was placed on deferred adjudication. At best, all the trial court determined in this case was that Appellant had the ability to make some monthly payment

(as yet undetermined) that would be made in accordance with a payment agreement that would be negotiated in the future with the county collections department.[4]

Accordingly, the procedural default considerations in *Manuel* and *Wiley* simply are not present in this case and it is neither reasonable nor practical to assume that a defendant being placed on deferred adjudication would contest by means of an appeal a condition of community supervision he or she reasonably expected to meet.[5] There being no independent judgment to contest, the facts here are clearly distinguishable from *Wiley* where a judgment imposed a clear and specific present obligation to pay a specific amount of attorney's fees. Furthermore, there being no essential factual determination made at the time of the original plea concerning Appellant's ability to pay the lump sum attorney's fees ordered, this case is distinguishable from *Manuel*. Accordingly, I would find *Wiley* and *Manuel* to be inapposite to the facts of this case.

Instead, I would be guided by the reasoning this Court expressed in *Wolfe v. State*, 377 S.W.3d 141 (Tex.App.-Amarillo 2012, no pet.), wherein we held that an appellant was not procedurally barred from contesting the sufficiency of the evidence to support the imposition of attorney's fees in the context of the revocation of an order of deferred adjudication. Ap-

plying *Wolfe*, finding no evidence to support the imposition of those fees pursuant to article 26.05 of the Texas Code of Criminal Procedure, I would reform the judgment to add the following provision at page 2 beneath the heading "Furthermore, the following special findings or orders apply": "As used herein the term 'court costs' does not include court-appointed attorney's fees" and as modified, I would affirm the judgment.

## OPINION ON MOTION FOR REHEARING

BRIAN QUINN, Chief Justice.

Pending before the court is a motion for rehearing. Appellant contends that she discovered another "arguable issue" pertaining to an assessment of a sheriff's fee. Therefore, additional briefing is warranted. We deny the motion.

Appellant's initial counsel filed an "Ander's Brief," contending that there were no "arguable issues" worthy of briefing. He also sought leave to withdraw. Per our duty under *In re Schulman*, 252 S.W.3d 403 (Tex.Crim.App.2008), we perused the record, discovered an "arguable issue," denied the motion to withdraw, and directed counsel to brief it and any other issue that he may encounter. Appellant's counsel complied with the directive. Moreover, the State filed its responsive brief, and the matter was submitted via oral argument. This court ultimately affirmed the trial court's judgment. We mention this to il-

---

4. Contrary to the majority, I believe *Manuel* limits the extent of forfeiture only to those issues which an appellant had notice of at the time of the original plea. Here, Appellant did not have notice of the full extent of attorney's fees ordered because the amount of those fees was, as yet, undetermined. Furthermore, having the ability to make a monthly payment is not the same thing as having the ability to pay the lump sum amount, a finding essential to the imposition of attorney's fees under arti-

cle 26.05 of the Texas Code of Criminal Procedure. Therefore, it cannot be said that Appellant had notice of that essential finding.

5. Here, the *Order of Deferred Adjudication* did not contemplate the payment of court costs and attorney's fees in a lump sum amount. The condition of supervision only required Appellant to make monthly payments in accordance with a payment arrangement to be made after taking into consideration Appellant's future income earning ability.

lustrate that while the proceeding may have begun as an *"Anders"* matter, it evolved into a normal appeal. Yet, appellant's motion for rehearing tends to treat the matter as an *"Anders"* situation, which it is not.

■ So, because new issues cannot be raised through a motion for rehearing, *Rogers v. Ardella Veigel Inter Vivos Trust No. 2,* 162 S.W.3d 281, 291 (Tex.App.-Amarillo 2005, pet. denied) (opinion on rehearing), we deny the motion.

PIRTLE, J., concurring and dissenting.

PATRICK A. PIRTLE, Justice, concurring and dissenting.

Pending before the Court is a motion for rehearing. By that motion Appellant, Tawona Sharmin Riles, complains about three separate issues relating to the assessment of costs: (1) $90 for sheriff's fees, (2) $10 fee for a subpoena purportedly issued 79 days after the date of the judgment, and (3) $4,185 for attorney's fees (including $3,185 included for the first time in a *Bill of Costs* issued two weeks *after* the issuance of our original majority and dissenting opinions). The majority would deny the motion because it contends these "new issues" cannot be raised through a motion for rehearing. *See Rogers v. Ardella Veigel Inter Vivos Trust No. 2,* 162 S.W.3d 281, 291 (Tex.App.-Amarillo 2005, pet. denied) (opinion on rehearing). Agreeing with the majority that, under the facts of this case, new issues cannot be raised by way of a motion for rehearing, but remaining convinced the trial court erred by assessing any attorney's fees in the first place, I concur in part and dissent in part.

### ISSUES RELATING TO THE ASSESSMENT OF SHERIFF'S FEES AND A SUBPOENA FEE

Appellant argues she should be permitted to raise new "arguable issues" because this appeal originally started out as an *Anders* appeal. Appellant is mistaken. While this appeal may have started as an *Anders* appeal, it was abated for the purpose of allowing Appellant to present a merits appeal. By that appeal, Appellant presented a single issue asserting the trial court erred by ordering the reimbursement of court-appointed attorney's fees without the requisite finding of an ability to pay. *See Mayer v. State,* 309 S.W.3d 552 (Tex.Crim.App.2010). The majority overruled that issue, finding that Appellant forfeited those claims by not appealing the original order deferring an adjudication of guilt. *See Riles v. State,* 417 S.W.3d 606, 607, 2013 WL 5568716, at *1, 2013 Tex. App. LEXIS 12446, at *2 (Tex.App.-Amarillo Oct. 7, 2013, no pet. h.).

Now Appellant wants to raise new issues pertaining to the assessment of a $10 subpoena fee and $90 in sheriff's fees. Although Appellant asserts a newly issued *Bill of Costs* presents a new "twist" because it contains a breakdown of the sheriff's fee that did not appear in the original *Bill of Costs,* the fact of the matter is both disputed fees appeared on the original *Bill of Costs,* which was attached to and incorporated in the trial court's judgment on appeal. As such, Appellant could have contested those fees in her merits brief. A party to an appeal is not entitled to raise new issues for the first time in a motion for rehearing. *See E.F. Hutton & Co. v. Youngblood,* 741 S.W.2d 363, 364 (Tex. 1987) (per curiam) (op. on reh'g) (holding that, under the circumstances of that case, an argument made for the first time in a motion for rehearing was waived). "[T]he sole purpose of a motion for rehearing is to provide the court an opportunity to correct any errors on issues already presented. A motion for rehearing does not afford a litigant an opportunity to raise new issues,

especially after the case has been briefed, argued, and decided on other grounds." *Wentworth v. Meyer,* 839 S.W.2d 766, 778 (Tex.1992) (Cornyn, J., concurring). Because Appellant did not raise an issue with respect to the assessment of the subpoena fee or sheriff's fees in her original merits brief, I concur with the majority in finding that those new issues cannot now be raised via her motion for rehearing.

### ISSUE RELATING TO THE ASSESSMENT OF ATTORNEY'S FEES

Appellant originally contended the trial court erred by ordering the reimbursement of court-appointed attorney's fees without the requisite finding of an ability to pay. Now, by way of her motion for rehearing, Appellant contends the trial court erred by assessing an *additional* $3,185 in attorney's fees in conjunction with her revocation hearing. Appellant contends she should not be barred from raising that issue because the $3,185 did not appear in the original *Bill of Costs* attached to the judgment.[1] I agree. Furthermore, the fact that the *Bill of Costs* was revised <u>after</u> the issuance of our original opinion only emphasizes the appropriateness of considering the issue on rehearing.[2] For the reasons stated in my original dissenting opinion, I again dissent from the decision of the majority to deny Appellant's motion for rehearing on the issue of attorney's fees. *See Riles v. State,* 417 S.W.3d at 609–13, 2013 WL 5568716, at *3–6, 2013 Tex.App. LEXIS 12446, at *9–18 (Tex.App.-Amarillo Oct. 7, 2013, no pet. h.) (Pirtle, J. dissenting).

### CONCLUSION

Accordingly, I concur with the decision of the majority to deny a rehearing with respect to Appellant's complaints concerning the subpoena fee and sheriff's fees, but I dissent as to the issue of attorney's fees. Consistent with my dissenting opinion, I would grant Appellant's motion for rehearing, correct the revised *Bill of Costs,* reform the judgment to add the following provision at page 2 beneath the heading "Furthermore, the following special findings or orders apply":[*] "As used herein the term 'court costs' does not include court-appointed attorney's fees;" and, as modified, I would affirm the judgment.

---

1. The original *Bill of Costs,* dated August 24, 2012, and attached to the judgment dated August 23, 2012, states: "Attorney Fee(s)— Probation Revocation CCP 26.05 0.00." The revised *Bill of Costs,* dated October 21, 2013, states: "Attorney Fee(s)—Probation Revocation CCP 26.05 3,185.00."

2. On the filing of a motion by a defendant not later than one year after the date of the final disposition of a case in which costs were imposed, the court in which the case is pending or was last pending *shall* correct any error in the costs. TEX.CODE CRIM. PROC. ANN. art. 103.008 (West 2006). (Emphasis added).